UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD TRESSLER,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

No. 06-12817

District Judge Bernard A. Friedman

Magistrate Judge R. Steven Whalen

# REPORT AND RECOMMENDATION

Plaintiff Richard Tressler brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED and that Plaintiff's motion be DENIED.

## PROCEDURAL HISTORY

Plaintiff filed claims for disability benefits on May 17, 1991, April 14, 1994, January 12, 1995, and September 14, 1995 which were denied initially and upon reconsideration (Tr. 64). He filed the present claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on February 14, 2003, alleging a disability onset date of February 6, 2003 (Tr. 54, 229). Upon denial of his claim, Plaintiff requested an administrative hearing, held on February 9, 2005, in Lansing, Michigan (Tr. 16, 240). Administrative Law Judge ("ALJ") B. Lloyd Blair presided (Tr. 242). Plaintiff, represented by attorney J. G. Frye, testified, as did Vocational Expert ("VE") Sharon Princer (Tr. 245-259, 259-264).

On August 24, 2005, ALJ Blair issued a non-disability finding, determining that Plaintiff was capable of performing his past relevant work as a housekeeper (Tr. 18). On April 19, 2006, the Appeals Council denied review (Tr. 4-6). Plaintiff filed suit in this Court on June 26, 2006. On October 12, 2006, Defendant Commissioner filed a Motion to Dismiss, arguing that Plaintiff failed to seek judicial review within 60 days as required by 42 U.S.C. §405(g). *Docket #8.* On August 23, 2007, the Honorable Bernard A. Friedman adopted this Court's recommendation to deny the motion. *Docket #16, 17.* Plaintiff filed a summary judgment motion on May 9, 2008. *Docket #25.* Defendant filed its summary judgment motion on June 16, 2008. *Docket #26.*

## BACKGROUND FACTS

Plaintiff, 43 at the time of the administrative decision, quit school after 10th grade and worked previously as a housekeeper, janitor, oil changer, driver, and press operator[1] (Tr. 91). He alleges disability as a result of knee, shoulder, and back problems (Tr. 90).

### A. Plaintiff's Testimony

Plaintiff, a resident of Adrian, Michigan, testified that he stood 5' 6" and weighed 170 pounds (Tr. 245). He reported that he quit school after 7th grade, and currently worked 12 hours a week as a cleaner (Tr. 245). Plaintiff indicated that the position required him to stay on his feet constantly and lift up to 7 pounds (Tr. 246). He reported that prior to the current position, he held a 25-hour per week housekeeping position requiring him to lift up to 20 pounds (Tr. 246-247). He testified that he also worked previously as a janitor (30-pound lifting) and oil changer (40-pound lifting) (Tr. 247-248).

---

[1] Plaintiff's application states that he left school after tenth grade (Tr. 91). However, he testified at the administrative hearing that he left school after seventh grade (Tr. 245).

-2-

Plaintiff alleged that four left knee surgeries, right and left shoulder surgeries, and prospective back surgery precluded all full-time work (Tr. 249). He reported undergoing arthroscopic knee surgery in 1998, left shoulder surgery (non-arthroscopic) in 2000, and right shoulder surgery (non-arthroscopic) in 2002 (Tr. 250). Plaintiff, right-handed, reported that he had "a half dozen different [knee] braces at home" (Tr. 250). He denied previous back surgery or physical therapy, but stated that he performed exercises described in a book recommended by his physician (Tr. 251). Plaintiff testified that he experienced constant "above the beltline" back pain (Tr. 251). In addition to exercise, he reported taking Flexeril, Vicodin, and Motrin for back pain (Tr. 252). Plaintiff testified that as a result of left shoulder pain, he had sought emergency treatment on one occasion in the past year (Tr. 252-252). Plaintiff, a recovering alcoholic, indicated that he continued to cook, do laundry, vacuum, and fish; but denied performing yard work or bicycling (Tr. 253). He stated that he shopped for groceries only on rare occasions (Tr. 253-254). Plaintiff estimated that he could lift up to 15 pounds, stand for half an hour, and walk for four blocks (Tr. 254). He reported that on a typical day, he arose at 7:00 or 8:00 a.m., smoked, made meals, and performed other light activities before making the half-hour commute to work cleaning a bank (Tr. 255). Plaintiff indicated that he slept restlessly and experienced occasional trouble with bathing and grooming activities as a result of shoulder and back pain (Tr. 255). Plaintiff estimated that he experienced trouble "doing basic life functions" 20 days each month (Tr. 256). On a scale of one to 10, he rated his right shoulder pain as six to seven, and left shoulder pain as seven to eight, adding that both job duties and the weather exacerbated his condition (Tr. 256-258). Plaintiff alleged that in the past few months, he had experienced difficulty grasping objects with his right hand (Tr. 258-259).

**B. Medical Records**

**1. Treating Sources**

In March 1997, Julie Henry, M.D., examined Plaintiff's left knee, noting a history of four surgical procedures (Tr. 135). Dr. Henry, noting that Plaintiff reported continued pain, advised against additional surgery (Tr. 135). The same month, Plaintiff admitted to Jeffrey A. Rosenthal, D.O., that he continued to smoke tobacco and marijuana (Tr. 133). Plaintiff reported knee pain, anxiety, and sleep difficulties (Tr. 133). In May 1997, Plaintiff discontinued the use of Ultram, reporting that he had developed a rash (Tr. 131). The same month, Plaintiff received prescriptions for Elavil and Naprosyn after complaining of anxiety and continued knee pain (Tr. 129). In April 2000, Plaintiff sought treatment after injuring his left arm in a fall (Tr. 137). X-rays showed the absence of fractures or dislocations (Tr. 137). Gregory Georgiadis, M.D., ordered EMG and nerve conduction studies (Tr. 137).

In March 1998, Plaintiff underwent a left shoulder proximal biceps tenodesis, performed by Kevin Kreuzer, M.D. (Tr. 191). February 2001 imaging studies of Plaintiff's neck, right shoulder, and right arm showed normal results (Tr. 187). A right shoulder arthrogram performed the following month and imaging studies of the right shoulder performed in June and July 2001 showed normal results (Tr. 178, 182-183). In October 2001, Plaintiff underwent an acromioplasty without complications (Tr. 163). April 2002 imaging studies of Plaintiff's lumbar spine showed negative results (Tr. 157). An MRI performed in July 2002 of the lumbar spine shows moderate degenerative changes (Tr. 138, 153). Plaintiff demonstrated good posture with a "normal" motor, sensory, and reflex exam (Tr. 138). In August 2002, Charles Snyder, M.D., limited Plaintiff to lifting or carrying a maximum of 15 pounds, finding further that he was precluded from overhead reaching (Tr. 140). In September 2002, Dr. Snyder noted that Plaintiff complained of non-radiating low

back pain but again demonstrated normal motor, sensory, and reflex abilities (Tr. 139).

### 2. Consultive and Non-Examining Sources

In March 2003, R. Scott Lazzara, M.D., performed a consultive physical examination of Plaintiff on behalf of the SSA (Tr. 194-200). Plaintiff reported that as a result of a left knee injury requiring four arthroscopic procedures, he required the occasional use of a cane (Tr. 194). Dr. Lazzara also noted that Plaintiff currently used band exercises, isometric therapy, and "a range of motion exercises," also taking Motrin 800, Flexeril, and Vicodin to relieve neck and thoracic pain (Tr. 194). Range of motion ("ROM") studies showed normal results (Tr. 197-198). Dr. Lazzara, observing that Plaintiff's shoulders appeared stable, noted "no evidence of synovial thickening or laxity," remarking further Plaintiff "does not appear to require the use of an assistive device (Tr. 198).

Notes from a psychological evaluation conducted the same month by Harold Stephen Bilotta indicate that Plaintiff denied the current use of alcohol, but admitted that he smoked two to three packs of cigarettes each day (Tr. 202). Plaintiff stated that he avoided big groups of people because of "mood swings," fished rarely, and could no longer ride a bicycle (Tr. 202-203). Dr. Bilotta deemed Plaintiff's prognosis "guarded," assigning him a GAF of 51[2] (Tr. 205).

In May 2003, a Psychiatric Review Technique ("PRT") found that Plaintiff's functional limitations as a result of affective disorders (depression) were mild (Tr. 210, 217). The Review noted that Plaintiff continued to watch television, perform household chores, exercise, watch children, and groom himself (Tr. 219). The same month, a Physical Residual

---

[2] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ) (4th ed.2000).

Functional Capacity Assessment found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; walk, stand, or sit for six hours in an eight-hour workday; and had an unlimited ability to push and pull in both extremities (Tr. 222). Plaintiff was limited to climbing ramps and stairs on an occasional basis and precluded from all ladder, rope, and scaffold climbing (Tr. 223). He was limited to occasional stooping, kneeling, crouching, and crawling (Tr. 223). Manipulative impairments consisted of a limited ability to reach (Tr. 224). The Assessment found the absence of visual, communicative, or environmental limitations, concluding with the statement that while "[Plaintiff's] complaints are entirely plausible [and] no doubt cause pain . . . . he continues to remain moderately active, leading me to believe he is capable of achieving employment successfully" (Tr. 225, 227). The Assessment found that Plaintiff's "allegations for severity of ambulatory limitations are partially credible" (Tr. 227).

### C. VE Testimony

VE Princer, stating that her testimony was consistent with the information in the Dictionary of Occupational Titles, classified Plaintiff's past work as a housekeeper as unskilled at the light exertional level; floor cleaner (janitor) as semiskilled at the medium exertional level; oil changer as semiskilled and medium; and a job for a glass company as unskilled and heavy[3] (Tr. 262). The ALJ then posed the following hypothetical question:

> "Assume a hypothetical individual who can meet the demands of light work, should never use ladders, scaffolds, or ropes, should only occasionally use ramps, stairs, kneel, stoop, crouch, or crawl. Should only occasionally reach

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

overhead with either upper extremity. Could such an individual do Claimant's past relevant work?"

(Tr. 263). The VE found that the individual could perform Plaintiff's past relevant work as a housekeeper as typically performed in the national economy (Tr. 263). The VE testified that if Plaintiff allegations of limitation were fully credited, all full-time work would be precluded (Tr. 263).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Blair found that although Plaintiff experienced the severe impairments of degenerative joint disease and degenerative disc disease, neither impairment met or equaled any impairment listed in Appendix 1, Subpart P, Regulations No.4 (Tr. 17). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC"):

> "to perform a range of light exertion work reduced by the following restrictions: lift a maximum of 20 pounds; lift up to 20 pounds occasionally and up to 10 pounds frequently; stand six hours in an 8-hour work shift; walk six hours of an 3-hour shift; sit six hours of an 8-hour shift; avoid ladders, scaffolds and ropes; only occasionally use ramps or stairs, stoop, crouch, kneel or crawl; and, only occasionally reach overhead."

(Tr. 18). Adopting the VE's findings, the ALJ found that Plaintiff was capable of performing his past relevant work as a housekeeper as "generally performed in the national economy" (Tr. 18-19).

The ALJ supported his determination by noting that Plaintiff's testimony was "not fully credible," stating that his activities of daily living ("ADLs") and part-time work stood at odds with his alleged level of limitation (Tr. 18). The ALJ also cited a consultive examiner's finding that Plaintiff's shoulders appeared well healed following surgery and that he exhibited a normal gait without an assistive device (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of

disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Substantial Evidence

Plaintiff contends that substantial evidence does not support the ALJ's non-disability finding. *Plaintiff's Brief, Docket 25* at 8. In particular, he argues that the ALJ performed an inadequate analysis of his medical records, asserting that the administrative discussion was limited to the finding of only one consultive physician. *Id.*

First, I disagree that the decision omits reference to Plaintiff's treating records. The ALJ, stating that "[t]he medical evidentiary record establishes" that Plaintiff experienced "the severe impairments of degenerative joint disease and degenerative disc disease" was obviously citing to treating and imaging records when making his Step Two determination (Tr. 17). The ALJ also cited evidence related to knee and shoulder surgeries indirectly, noting Plaintiff's testimony as to limitations as a result of those procedures (Tr. 17). More obviously, Plaintiff did not submit any medical records post-dating his February 14, 2003 DIB/SSI applications. The ALJ found accordingly that "[t]here is no medical evidence submitted subsequent to the state

agency recommendation that would cause me to offer a residual functional capacity that would vary therefrom" (Tr. 18 *citing* 222-226).

Further, although Plaintiff argues that the ALJ's erred in failing to conduct a full-blown discussion of his physicians' records, in fact, treating source material does not support his allegations of disability. For example, Dr. Snyder's August, 2002 finding that Plaintiff was restricted to carrying 15 pounds and precluded from all overhead reaching (Tr. 140) seemingly contradicts the ALJ's determination that Plaintiff could lift up to 20 pounds and perform occasional overhead reaching (Tr. 18). However, Dr. Snyder's work restrictions are limited to August 27, 2002 through September 24, 2002 - there is no indication that the physician found that Plaintiff experienced these limitations permanently (Tr. 140). While Plaintiff's earlier medical records support his testimony that he underwent both knee and shoulder surgeries, the ALJ reasonably determined that none of the treating records contradict the May 2003 Residual Functional Capacity Assessment.[4]

### B. Credibility

Plaintiff also contends that the ALJ impermissibly discounted his subjective complaints of limitations, arguing that the administrative decision contained an erroneous credibility determination. *Plaintiff's* Brief at 9. He asserts that the ALJ, in determining that his allegations were only partially credible, failed to consider his testimony that he

---

[4]The uncontradicted opinions of treating physicians are entitled to complete deference. *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7)(6th Cir. 1991). In the presence of contradictory evidence that would allow the ALJ to accord less than controlling weight, she must nonetheless consider the following factors: "the length of the . . . relationship and the frequency of examination, the nature and extent of the treatment, . . . [the] supportability of the opinion, consistency . . . with the record as a whole, and the specialization of the treating source." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004)(*citing* 20 C.F.R. § 404.1527(d)(2)).

experienced drowsiness as a result of pain medication. *Id.* at 10 (*citing* Tr. 257).

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record." C.F.R. 404.1529(c)(3), 416.929(c)(3) lists the factors to be considered in evaluating the making the determination:

> "(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

The ALJ's credibility determination was both procedurally and substantively sound. Plaintiff claims that the ALJ did not consider his allegation that his medication made him drowsy. However, Plaintiff's own testimony indicates that his medication did not create more than mild limitations, stating that he felt "drowsy in the mornings when I first wake up . . . then I don't feel too bad after that. I feel more awake after the first couple hours" (Tr. 257).

I also disagree with the more general argument that the ALJ failed to state his reasons for rejecting Plaintiff's allegations of limitation. The ALJ cited Plaintiff's admitted activities

-11-

of daily living ("ADLs"), noting that he admitted that he continued to vacuum, dust, shovel snow, and perform household repairs (Tr. 18 *citing* 105). Although Plaintiff faults the ALJ for discounting the portion of his hearing testimony suggesting greater limitations than in the earlier-composed ADLs, the ALJ permissibly took into account Plaintiff "demeanor" at the hearing in rejecting a portion of his claims (Tr. 18). *See Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993). The ALJ also noted that Plaintiff's professed degree of limitation stood at odds with his continued work as a part-time cleaner[5] (Tr. 18). Likewise, an ADLs report by Plaintiff's girlfriend indicating that he continued to cook, clean, and perform yard work on a regular basis undermines his allegation of disability (Tr. 119). Because the ALJ's credibility determination is well supported by substantial evidence, it should remain undisturbed. *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'").

In closing, the finding that the ALJ's determination should be upheld is not intended to trivialize Plaintiff's legitimate impairments. However, an abundance of evidence supports the ALJ's conclusion that Plaintiff's knee, shoulder, and back problems do not preclude performing his past relevant work as a housekeeper. Based on a review of this record as a whole, the ALJ's decision is clearly within the "zone of choice" accorded to the fact-finder at the administrative hearing level pursuant to *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

**CONCLUSION**

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment be

---

[5]While Plaintiff's part-time work does not qualify as substantial gainful employment ("SGE") at Step One of the analysis, the ALJ was entitled to consider the continued part-time work in making his credibility determination.

DENIED and Defendant's Motion for Summary Judgment be GRANTED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: October 8, 2008

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 8, 2008.

S/Gina Wilson
Judicial Assistant